Cite as 2020 Ark. App. 310

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-19-616

| | |
|---|---|
| GERALD STOW | Opinion Delivered: May 13, 2020 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION |
| V. | [NO. 60CV-17-1564] |
| JOHN MONTGOMERY, SHERIFF FOR BAXTER COUNTY, ARKANSAS, IN HIS OFFICIAL CAPACITY | HONORABLE MACKIE M. PIERCE, JUDGE |
| APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Gerald Stow, a convicted sex offender, filed a petition for declaratory judgment against appellee John Montgomery, Sheriff for Baxter County, Arkansas, asking that he no longer be required to register as a sex offender.[1] Stow subsequently moved for summary judgment asserting that under the undisputed facts he was required to be removed from the sex-offender registry because his prior conviction did not fall within the scope of the Arkansas Sex Offender Registration Act of 1997, Ark. Code Ann. §§ 12-12-901 et seq. (Repl. 2016 & Supp. 2019) (The Act). After a hearing, the trial court entered an order

---

[1]Although Stow is a resident of Baxter County, he filed his petition in the Pulaski County Circuit Court, stating that jurisdiction and venue were proper under Ark. Code Ann. § 16-60-104(3)(A) because his civil action was against a state officer because of his official acts. In Sheriff Montgomery's response to Stow's petition, he acknowledged that he is a state officer and is authorized to register sex offenders in Baxter County. Sheriff Montgomery defended the petition in Pulaski County, and he made no objection to personal jurisdiction or venue, both of which may be waived. *See Higgins v. Burnett*, 349 Ark. 130, 76 S.W.3d 893 (2002).

stating that "after consideration of the arguments of counsel and reviewing both the briefs of the parties, and applicable cases presented therein, the Court hereby Finds and Orders the Plaintiff's Motion for Summary Judgment is denied." Stow now appeals from the trial court's order denying his motion for summary judgment, and we affirm.

Before reaching the merits of Stow's appeal, we first address our jurisdiction. An order denying summary judgment is generally not appealable. *Nucor Holding Corp. v. Rinkines*, 326 Ark. 217, 931 S.W.2d 426 (1996). However, Arkansas Rule of Appellate Procedure–Civil 2(a)(2) provides that an appeal may be taken from "[a]n order which in effect determines the action and prevents a judgment from which an appeal might be taken, or discontinues the action." Both parties here agree that we have appellate jurisdiction because there were no factual disputes below, and the order denying Stow's summary-judgment motion effectively determined and discontinued the action. We agree. When the trial court entered its order denying summary judgment, that order determined the action, and there was nothing left to be litigated. In *Mercer v. Engle*, 2012 Ark. App. 277, this court explained that an order is final when it concludes the parties' rights to the subject matter in controversy. Because the order being appealed in this case concluded the parties' rights to the subject matter at issue, we have jurisdiction to hear the appeal.

In 1989, Stow pleaded guilty in Colorado to aggravated incest of his daughter. For this offense, Stow was incarcerated in Colorado before being paroled in 1994. Stow was discharged of his sentence and released from parole on April 16, 1997. Under Colorado law Stow's aggravated-incest conviction required him to register as a sex offender for the remainder of his life.

2

In 2002, Stow moved to Baxter County, Arkansas. He was subsequently required to register as a sex offender in Arkansas. In March 2017, Stow initiated this action by filing a petition for declaratory judgment in an attempt to be removed from the sex-offender registry based on his claim that he was not required to register under the applicable laws of Arkansas. As stated previously, the trial court ruled against him and Stow appeals.

In this appeal, Stow makes the same arguments that were raised and rejected below. In asserting that he is not required to register as a sex offender in Arkansas, Stow cites Ark. Code Ann. § 12-12-905 (Repl. 2016), which for purposes relevant to this appeal provides:

> (a) The registration or registration verification requirements of this subchapter apply to a person who:
>
> (1) Is adjudicated guilty on or after August 1, 1997, of a sex offense, aggravated sex offense, or sexually violent offense; [or]
>
> (2) Is serving a sentence of incarceration, probation, parole, or other form of community supervision as a result of an adjudication of guilt on or after August 1, 1997, for a sex offense, aggravated sex offense, or sexually violent offense[.]

Stow asserts that subsection (a)(1) of this statute does not apply to him because his Colorado conviction occurred in 1989. He further contends that subsection (a)(2) is inapplicable because he completed his Colorado sentence on April 16, 2017, when he was released from parole. Stow asserts that he was not "serving a sentence of incarceration, probation, parole, or other form of community supervision" on or after August 1, 1997, and therefore under the plain language of the statute, the registration requirements "of this subchapter," i.e., The Act, do not apply to him.

Stow acknowledges that another subsection of The Act contains language stating that a person who lives in Arkansas shall register as a sex offender if he would be required to

3

register as a sex offender in the jurisdiction where he was adjudicated guilty.  Arkansas Code Annotated section 12-12-906(a)(2) provides, in pertinent part:

> (2)(A) A sex offender who moves to or returns to this state from another jurisdiction and who would be required to register as a sex offender in the jurisdiction in which he or she was adjudicated guilty or delinquent of a sex offense shall register with the local law enforcement agency having jurisdiction in person within five (5) calendar days after the sex offender moves to a municipality or county of this state.
>
> (B)(i) Any person living in this state who would be required to register as a sex offender in the jurisdiction in which he or she was adjudicated guilty or delinquent of a sex offense shall register as a sex offender in this state whether living, working, or attending school or other training in Arkansas.

It is undisputed that Stow was adjudicated of a sex offense in Colorado and he would be required to register as a sex offender in that state.  Stow, however, argues that the above statutory authority does not require him to register as a sex offender in Arkansas because it should not be read independently from section 12-12-905(a).  Stow maintains that section 12-12-906(a)(2) is limited by the registration requirements of section 12-12-905, and more particularly subsection 12-12-905(a)(2), which provides that registration requirements apply under that subsection only if the person is serving a sentence of incarceration, probation, parole, or other form of community supervision as a result of an adjudication of guilt on or after August 1, 1997.

We review issues of statutory construction de novo.  *Pedraza v. State*, 2015 Ark. App. 205, 465 S.W.3d 426.  This means that we are not bound by the circuit court's decision, but in the absence of a showing that the circuit court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal.  *Id.*  The basic rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words the ordinary and usually accepted meaning in common language.  *Id.*  When the language is

4

plain and unambiguous, we will not resort to rules of statutory construction, and the analysis stops. *Id*. The legislature is presumed to be familiar with the appellate courts' interpretation of its statutes, and it can amend a statute if it disagrees with those interpretations; absent such an amendment, the interpretation of the statute remains the law. *Sawyer v. State*, 327 Ark. 421, 938 S.W.2d 843 (1997).

We conclude that Stow is required to register as a sex offender in Arkansas under the plain language of Ark. Code Ann. § 12-12-906(a)(2) because Stow would be required to register as a sex offender in the jurisdiction in which he was adjudicated guilty of a sex offense. As is clear on its face, this statute contains no limitations with respect to the when the sex offender was adjudicated guilty or required to register in the foreign jurisdiction. The statute makes clear that if the person is presently required to register in the foreign jurisdiction, he or she is required to register in Arkansas.[2]

This interpretation of The Act is consistent with our court's holding in *Hammock v. State*, 2009 Ark. App. 414, 322 S.W.3d 22. In that case, Hammock was found guilty of failure to register as a sex offender and appealed. On appeal, he argued that Arkansas' sex-offender-registration requirement did not apply to him and that his conviction for failure to register as a sex offender was an unconstitutional *ex post facto* application of the law.

Hammock pleaded guilty to third-degree rape in the state of Washington in June 1996. He was sentenced to fourteen months in prison, with two additional years of

---

[2]We reject Stow's contention that Ark. Code Ann. § 12-12-906 should not be read independently and is limited by Ark. Code Ann. § 12-12-905. Each of these sections sets forth separate criteria for sex-offender registration, and subsection (a)(2) of section 12-12-906 squarely applies to the circumstances herein.

community placement, and required to register as a sex offender in Washington. Hammock argued on appeal that Arkansas Code Annotated section 12-12-905 did not apply to him because it did not become effective until after his conviction.

We rejected Hammock's argument, relying exclusively on the provisions of Arkansas Code Annotated section 12-12-906(a)(2)(A)–(B)(i). We wrote:

> [H]e argues that section 12-12-905 (Supp. 2007) did not apply to him because the statute did not become effective until after his conviction. This statute provides, in pertinent part:
>
> > (a) The registration or registration verification requirements of this subchapter apply to a person who:
> >
> > (1) Is adjudicated guilty on or after August 1, 1997, of a sex offense, aggravated sex offense, or sexually violent offense;
> >
> > (2) Is serving a sentence of incarceration, probation, parole, or other form of community supervision as a result of an adjudication of guilt on or after August 1, 1997, for a sex offense, aggravated sex offense, or sexually violent offense[.]
>
> The trial court found that subsection (a)(2) was applicable to Hammock, as he was still serving some form of community supervision after August 1, 1997. Hammock argues that the language of the statute "states that registration is applicable to him only if he was serving some form of community supervision for *an adjudication of guilt on or after August 1, 1997.*" (Hammock's emphasis.)
>
> We hold that it is unnecessary to interpret section 12-12-905 in order to determine whether Hammock was required to register under it as a sex offender in Arkansas because the next successive statutory section, § 12-12-906(a)(2)(A)–(B)(i) (Supp. 2007), clearly requires Hammock to register as a sex offender. This statutory section requires in more definite terms:
>
> > (2)(A) A sex offender moving to or returning to this state from another jurisdiction shall register with the local law enforcement agency having jurisdiction within three (3) business days after the sex offender establishes residency in a municipality or county of this state.
> >
> > (B)(i) Any person living in this state who would be required to register as a sex offender in the jurisdiction in which he or she was adjudicated guilty of

6

> a sex offense shall register as a sex offender in this state whether living, working, or attending school or other training in Arkansas.
>
> Hammock's conviction in the state of Washington required that he register as a sex offender; therefore, under section 12-12-906(B)(i), he is also required to register as a sex offender in Arkansas.

*Hammock*, 2009 Ark. App. 414, at 2–3, 322 S.W.3d at 23–24.

As we held in *Hammock*, it is unnecessary to interpret section 12-12-905 in order to determine whether Stow was required to register as a sex offender in Arkansas because the definite terms of next successive statutory section, § 12-12-906(a)(2)(A)–(B)(i), clearly require Stow to register. The *Hammock* court made no comment on whether the appellant was required to register as a sex offender under the separate provisions contained in section 12-12-905, and neither do we. Because Stow's Colorado conviction required him to register as a sex offender in Colorado, under the unambiguous requirements of section 12-12-905(a)(2)(B)(i) he is also required to register as a sex offender in Arkansas.

Stow also argues, in the alternative, that if the relevant provisions of The Act require him to register as a sex offender, then The Act is unconstitutional. Stow contends that to require him to register under the provisions of The Act is a denial of both due process and equal protection. We, however, do not agree.

Our supreme court has held that the purpose of Arkansas's Sex Offender Registration Act is nonpunitive. *Ark. Dep't of Corr. v. Bailey*, 368 Ark. 518, 247 S.W.3d 851 (2007). Given that The Act is not punitive and that no fundamental right is implicated, we need not apply a strict-scrutiny analysis, but may instead determine whether a rational basis exists for The Act. *Id.* Under the rational-basis test, the party challenging the constitutionality of the statute must prove that the statute is not rationally related to achieving any legitimate

7

governmental objective under any reasonably conceivable fact situation. *Id.*; *see also Whorton v. Dixon*, 363 Ark. 330, 214 S.W.3d 225 (2005); *Rose v. Ark. State Plant Bd.*, 363 Ark. 281, 213 S.W.3d 607 (2005).

There is a presumption of validity attending every consideration of a statute's constitutionality that requires the incompatibility between it and the constitution to be clear before the statute is held to be unconstitutional; if possible, the appellate courts will construe a statute so that it is constitutional. *Bynum v. State*, 2018 Ark. App. 201, 546 S.W.3d 533. Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality, and the heavy burden of demonstrating the unconstitutionality is on the one attacking the statute. *Id.* As statutes "are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable." *Bowker v. State*, 363 Ark. 345, 355, 214 S.W.3d 243, 249 (2005). It is the duty of the courts to sustain a statute unless it appears to be clearly outside the scope of reasonable and legitimate regulation. *Brown v. State*, 2015 Ark. 16, 454 S.W.3d 226. "Invalidating a statute on its face is, manifestly, strong medicine that has been employed sparingly and only as a last resort." *Anderson v. State*, 2017 Ark. 357, at 3, 533 S.W.3d 64, 67. Our supreme court has noted that the vast majority of federal and state courts confronted with the issue of the validity of sex-offender-registration statutes have found the laws constitutional. *See Kellar v. Fayetteville Police Dep't*, 339 Ark. 274, 5 S.W.3d 402 (1999).

Stow argues that it is a violation of his Fifth Amendment right to due process to require him to register as a sex offender under the aforementioned Arkansas statutes. Stow cites *Johnson v. United States*, 576 U.S. 591 (2015), where the Supreme Court stated that the

government violates the Due Process Clause by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes or so standardless that it invites arbitrary enforcement. Stow contends that the Arkansas laws under which he was required to register failed to give him fair notice of the registration requirement. We do not agree.

As we stated in *Hammock*, *supra*, the requirements of Ark. Code Ann. § 12-12-906(a)(2)(B)(i) are definite it their terms, plainly providing that "[a]ny person in this state who would be required to register as a sex offender in the jurisdiction in which he or she was adjudicated guilty of a sex offense shall register as a sex offender in this state[.]" We conclude that the language of this statute is clear and is not so standardless that it invites arbitrary enforcement, and that Stow has failed in his burden of demonstrating that the statute violates due process.

Stow also argues that application of the relevant statutes violates his right to equal protection under the laws as guaranteed by the Fourteenth Amendment. Stow claims that reading sections 905 and 906 as separate enabling provisions would result in retroactive application against out-of-state offenders while establishing no such retroactive effect as to in-state offenders.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause generally requires the government to treat similarly situated people alike. *Brown v. State*, 2015 Ark. 16, 454 S.W.3d 226. The first step in an equal-protection case is to determine

whether similarly situated people are being treated differently. *Id.* We hold that sex offenders facing sex-offender-registration requirements are similarly situated for equal-protection purposes.

The next step in our analysis is to determine whether the classification meets the appropriate standard, which in this case is rational basis. Under the rational-basis test, legislation is presumed constitutional and rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation. *Id.* It is not our role to discover the actual basis for the legislation. *Id.* We merely consider whether there is any rational basis that demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of arbitrary and capricious government purposes. *Id.*

As we stated previously, the purpose of Arkansas's Sex Offender Registration Act is nonpunitive. Arkansas Code Annotated section 12-12-902, "Legislative findings," provides:

> The General Assembly finds that sex offenders pose a high risk of reoffending after release from custody, that protecting the public from sex offenders is a primary governmental interest, that the privacy interest of persons adjudicated guilty of sex offenses is less important than the government's interest in public safety, and that the release of certain information about sex offenders to criminal justice agencies and the general public will assist in protecting the public safety.

As can be readily seen by the above pronouncement of our legislature, the purpose of sex-offender registration is for the protection of public safety. Moreover, the United States Supreme Court has determined that sex offenders "are a serious threat in this nation" and has stated that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sex assault." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003). Different states have different criteria for

10

determining which sex offenders must register in their respective states. By requiring sex offenders convicted in other states that are required to register there to also register in Arkansas—should those sex offenders choose to live in our state—the legislature has left it to the other states to decide which of its sex offenders are at a high risk for reoffending and the need to protect the public from the offender. This legislation also discourages sex offenders convicted in other states from forum shopping. Of course, the state has a legitimate interest in protecting its citizens from sex offenders. Equal protection does not require that persons be dealt with identically; it requires only that classification rest on real and not feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that their treatment is not so disparate as to be arbitrary. *Smith v. State*, 354 Ark. 226, 118 S.W.3d 542 (2003). With these considerations in mind, we hold that Stow has failed in his burden to demonstrate an equal-protection violation.

Finally, Stow makes a brief argument contending that there has been an infringement on his fundamental right to travel. The constitutional "right to travel" embraces at least three different components: (1) it protects the right of a citizen of one state to enter and to leave another state; (2) it protects the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state; and (3) for those travelers who elect to become permanent residents, it protects the right to be treated like other citizens of that state. *Saenz v. Roe*, 526 U.S. 489 (1999). Again, we begin with the presumption that statutes are constitutional and that the heavy burden of demonstrating the unconstitutionality is on the one attacking the statute. *Bynum*, *supra*. The challenged legislation does not prevent persons registered as sex offenders in other states from traveling

11

to Arkansas nor becoming permanent residents of our state. Moreover, any resident of Arkansas (including Stow) who was adjudicated of a sex offense in another state and was required to register under the rules of that state would also be required to register as a sex offender here.

We find *United States v. Ambert*, 561 F.3d 1202 (11th Cir.), persuasive. In that case, Ambert was convicted of a sex offense in California and was required to register as a sex offender under the laws of that state. He thereafter moved to Florida, where he failed to register as a sex offender and was convicted of failing to register under the Sex Offender Registration and Notification Act (SORNA), in violation of 18 U.S.C. § 2250(a). That provision of SORNA requires a sex offender to keep his or her registration current in each jurisdiction where the offender resides. Ambert argued that SORNA violated his right to travel, but the Eleventh Circuit Court of Appeals disagreed. The federal appeals court wrote:

> We addressed the burden imposed on the travel of sex offenders in our review of the Florida sex offender registry law in *Doe v. Moore*, 410 F.3d 1337 (11th Cir. 2005). There, a panel of this Court held that the requirement to notify Florida officials in person when changing permanent or temporary addresses did not violate the defendants' right to travel. We wrote:
>
> > Though we recognize this requirement [to notify Florida officials in person when changing permanent or temporary addresses] is burdensome, we do not hold it is unreasonable by constitutional standards, especially in light of the reasoning behind such registration. The state has a strong interest in preventing future sexual offenses and alerting local law enforcement and citizens to the whereabouts of those that could reoffend. Without such a requirement, sex offenders could legally subvert the purpose of the statute by temporarily traveling to other jurisdictions for long periods of time and committing sex offenses without having to notify law enforcement.
>
> *Id*. The same rationale applies here. The requirement to update a registration under SORNA is undoubtedly burdensome; however, the government's interest in

12

protecting others from future sexual offenses and preventing sex offenders from subverting the purpose of the statute is sufficiently weighty to overcome the burden. This statute does not violate Ambert's right to travel.

*Ambert*, 561 F.3d at 1209–10. We conclude that Stow has failed to establish an unconstitutional infringement on his right to travel.

In conclusion, we hold that the trial court committed no error in finding that Stow is required to register as a sex offender under the laws of Arkansas. We further hold that the trial court did not err in finding that Stow failed to establish a violation of his constitutional rights. Therefore, the trial court's order denying Stow's motion for summary judgment is affirmed.

Affirmed.

GRUBER, C.J., and SWITZER, J., agree.

*Jeremy Lowrey*, for appellant.

*David L. Ethredge*, Baxter Cnty. Prosecuting Att'y, by: *Brad Brown*, for appellee.